F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  DEC 11 2019

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ANA T. VARGAS,

               Plaintiff,

    -against-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

-------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-5683 (CBA)

**AMON, United States District Judge:**

Plaintiff Ana T. Vargas ("Vargas") commenced this action pursuant to Title II of the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final determination by the Commissioner ("Commissioner" or "Defendant") of the Social Security Administration ("SSA") denying her application for Social Security Disability Benefits from May 1, 2003 through September 18, 2006. (See D.E. # 1 ("Compl.").) Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Vargas seeks an order reversing the Commissioner's determination that she was not disabled from May 1, 2003 through September 18, 2006, and a remand for reconsideration of the agency's decision. The Commissioner defends the SSA's decision and seeks dismissal of the Complaint. For the reasons set forth below, the Court concludes that the case must be remanded.

## BACKGROUND

### I.     Procedural History

Vargas alleges that she became disabled on May 1, 2003. (D.E. # 7 ("Administrative Record" or "R.") at 322, 341, 400.) On November 19, 2004, Vargas applied for Social Security Disability Insurance and Income Benefits. (Id. at 33.) From there, this case took on a winding, complicated history. On March 6, 2007, an administrative law judge ("ALJ") found that Vargas

1

was not disabled. (Id. at 109–29.) The Appeals Council shortly thereafter remanded for further administrative proceedings so that the ALJ could give more extensive consideration to a treating physician's opinion. (Id. at 102.) On July 24, 2009, the ALJ ruled that Vargas was disabled as of August 23, 2008, due to her mental and physical impairments. (Id. at 176.) Believing that she had become disabled earlier, Vargas again sought review from the Appeals Council. (Id. at 241.) On August 11, 2011, the Appeals Council proposed a finding of disability beginning on September 19, 2006. (Id. at 243.) On September 13, 2011, Vargas's attorney accepted this proposal, writing "[a]t this time, with Ms. Vargas' authorization, we accept the Appeals Council's proposal finding the claimant disabled beginning September 19, 2006." (Id. at 246.) Pursuant to that agreement, the Appeals Council thereafter issued a ruling finding that Vargas became disabled as of September 19, 2006. (Id. at 241–45.)

Despite Vargas's onetime consent to an onset date of September 19, 2006, she resuscitated her effort to obtain benefits from May 1, 2003 through September 18, 2006 by commencing the instant action on November 21, 2011. (D.E. # 1.) Due to a missing hearing transcript, the parties thereafter stipulated to a remand for further administrative proceedings. (D.E. # 5.) On June 19, 2013, the ALJ held another hearing. (R. at 1249.) On January 21, 2014, the ALJ found that Vargas was not disabled for this time period, (id. at 216), and Vargas again sought review from the Appeals Council, (id. at 221). The Appeals Council remanded yet again, finding that Vargas was eligible for relief pursuant to the class settlement reached in Padro v. Colvin, 11-CV-1788 (CBA). (Id. at 224.) On remand, an ALJ who was not named in that lawsuit was assigned to hear her case. (Id.)

On February 19, 2015, for the fifth time, Vargas went before an ALJ for a hearing about whether she was disabled between May 1, 2003 and September 18, 2006. (Id. at 10.) On February 19, 2015, the ALJ found that Vargas was not disabled during that time period. (Id. at 23.) Because

2

this Court retained jurisdiction pursuant to 42 U.S.C. § 405(g), the Commissioner requested that the case be reopened on April 8, 2016. (D.E. # 8.) The Court granted the Commissioner's motion on May 10, 2016. (D.E. # 10.) On July 18, 2016, the Commissioner filed for judgment on the pleadings. (D.E. # 14 ("Comm'r Br.").) Vargas, now proceeding pro se following her attorney's decision that it would be "inappropriate" to continuing representing her after he had informed the SSA that she consented to an onset date of September 19, 2006, (R. at 35), opposed the Commissioner's motion, (D.E. # 15 ("Pl. Mem.")).

## II. Relevant Medical Evidence

To briefly recount the background facts of this case, Vargas was born in 1961 and attended school through the ninth grade in the Dominican Republic. (R. at 322, 341, 400.) She worked as a home health aid from 1984 until May 1, 2003. (Id.) She stopped working on that day because she slipped on ice and hit her head while walking to work. (Id. at 322.) Given the thousands of pages of medical evidence in the Record and the fact that there is no dispute that Vargas has been disabled since September 18, 2006, the Court limits most of its review to the disputed time period, i.e., May 1, 2003 through September 18, 2006. The Court further limits its review to the medical evidence concerning Vargas' mental impairments because that issue is dispositive of the case.

### A. Consultative Examinations

#### a. Dr. Kautilya Puri

On December 23, 2004, Dr. Kautilya Puri performed a consultative examination of Vargas. (Id. at 410–14.) Vargas complained that she suffered from persistent headaches and forgetfulness. (Id. at 410.) Dr. Puri found that Vargas was oriented in all spheres and demonstrated no defects in her judgment or memory. (Id. at 412.) He diagnosed diabetes mellitus, diabetic neuropathy,

and chronic headaches. (Id.) He opined that Vargas did not have any objective limitations in communicating or gross motor activity. (Id. at 413.)

### b. Dr. Kenneth Cochrane

On February 23, 2005, Dr. Kenneth Cochrane performed a consultative examination. (Id. at 415–20.) Dr. Cochrane reported that Vargas had vocational difficulties caused by cognitive deficits and measured her IQ at 56. (Id. at 418.) He opined that she suffered from mild retardation. (Id.) In sharp contrast with Dr. Puri's opinion, Dr. Cochrane opined that Vargas could not perform simple tasks independently, maintain her concentration and attention, or maintain a regular schedule without assistance. (Id.) He also opined that she was unable to learn new tasks and was only minimally able to make appropriate decisions and deal with stress. (Id.)

### c. Dr. Rochelle Sherman

On May 5, 2005, Dr. Rochelle Sherman performed a consultative evaluation in Spanish. (Id. at 427–32.) Dr. Sherman found Vargas confused and disoriented, but marginally self-sufficient. (Id. at 428.) She measured Vargas's IQ at 64 points and opined that this caused her difficulties in learning new tasks. (Id.) Dr. Sherman also opined that Vargas's functioning was in the impaired range, but she was capable of performing work tasks. (Id.) She diagnosed Vargas as suffering from depression and dementia. (Id.)

### d. Dr. Arlene Rupp-Goolnick

On May 27, 2005, Dr. Arlene Rupp-Goolnick conducted a consultative psychiatric evaluation of Vargas. (Id. at 433.) Vargas reported that she had short and long term memory deficits and difficulties concentrating. (Id. at 434.) Dr. Rupp-Goolnick diagnosed Vargas as suffering from depressed mood and mild mental retardation. (Id. at 243.) Dr. Rupp-Goolnick opined that, even though Vargas was mentally handicapped, she was capable of performing all

"necessary tasks." (Id.) Dr. Rupp-Goolnick concluded that Vargas was able to learn new tasks but was unable to make appropriate decisions or deal with stress. (Id.) Despite these significant limitations, Dr. Rupp-Goolnick opined that there "was no real evidence of psychiatric disturbance." (Id.)

### B. Non-Examining Physicians

#### a. Dr. Jusino

On April 18, 2005, Dr. C. Jusino, a state agency psychiatric consultant, reviewed the record, which at that point consisted of the contrasting opinions offered by Drs. Puri and Cochrane. (Id. at 425.) Dr. Jusino cast doubt on the conclusions reached by Dr. Cochrane because, according to him, Vargas should have been given a different IQ test since she was from the Dominican Republic and primarily spoke Spanish. (Id. at 424.) Dr. Jusino noted that Vargas's past work history suggested that she could perform jobs with simple, repetitive tasks. (Id. at 426.) However, this prognostication did not account for Vargas's head injury that caused her to stop working in the first place. (See id.) Ultimately, Dr. Jusino concluded that there was "insufficient evidence . . . to accurately determine the severity of any mental impairment." (Id.)

#### b. Dr. Yakov Burstein

On July 26, 2005, Dr. Yakov Burstein, a state agency psychological consultant, reviewed the record and assessed Vargas's Residual Functional Capacity ("RFC"). (Id. at 455–58.) Dr. Burstein noted that although Vargas's IQ was well below average, her overall functioning—based upon her daily activities—indicated that she did not suffer from very many limitations. (Id.) For example, Dr. Burstein opined that Vargas had mild restrictions in her daily activities and in maintaining social functioning. (Id. at 469.) He also found that she had moderate difficulties in

5

maintaining concentration, persistence, or pace, and had experienced one or two episodes of deterioration. (Id.)

### C. Treating Physicians

#### a. Dr. Luis Locuratolo

On September 19, 2006, Dr. Luis Locuratolo, a psychiatrist, assessed Vargas's overall mental capacity. (Id. at 502.) He stated that his assessment of Vargas was based upon his examinations of her during the past year. (Id.) In opining on Vargas's condition, Dr. Locuratolo appears to have quoted Vargas's statements reporting her crying spells, fatigue, difficulty concentrating, and forgetfulness. (Id.) He also reported that Vargas was taking Lexapro and several painkillers. (Id.) He opined that Vargas was suffering from persistent generalized anxiety disorder and moderate to severe depression. (Id.) He further opined that her prognosis was "poor." (Id.)

Dr. Locuratolo also completed a medical source statement a few months later on January 29, 2007. (Id. at 600–08.) In that assessment, Dr. Locuratolo opined that Vargas suffered from 14 marked limitations, including the ability to: understand and carry out detailed instructions, complete a work week without a major psychological interruption, make plans, get along with co-workers, respond to changes in the workplace, and the ability to make simple work related decisions. (Id. at 604.) Based upon that assessment, Dr. Locuratolo opined that Vargas could not handle even "low stress" employment. (Id. at 606.) Lastly, he opined that Vargas's limitations began in "late 2002." (Id. at 607.)

#### b. Dr. Azariah Eshkenazi

On September 21, 2006, Dr. Azariah Eshkenazi examined Vargas at the request of her attorney. (Id. at 510–13.) He indicated that Vargas had poor memory, appetite, and difficulties in

6

concentrating. (Id. at 512.) Like Dr. Locuratolo, Dr. Eshkenazi found Vargas was severely limited by her mental condition. For example, he opined that her mental impairments would cause her to miss work three times per month. (Id.) More specifically, Dr. Eshkenazi found that Vargas was markedly limited in: understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerance, and responding appropriately to changes in the workplace setting. (Id. at 516–17.) He found that Vargas was moderately limited in: remembering locations and work-like procedures, carrying out simple one or two step instructions, sustaining ordinary routine without supervision, working in coordination with or proximity to others without being distracted, and making simple work-related decisions. (Id.) Unlike Dr. Locuratolo, Dr. Eshkenazi opined that Vargas could handle "low stress" employment. (Id. at 519.)

### c. Dr. Lober Cervantes

Dr. Lober Cervantes, a psychiatrist, began treating Vargas on August 23, 2008. (Id. at 812.) A few months later, on October 4, 2012, Dr. Cervantes completed two written assessments. The first was a short "narrative report" describing Vargas's medical condition. (Id. at 842.) This report stated that Vargas suffered from depression, which was accompanied by low energy levels, poor concentration, and panic attacks. (Id.) This report also noted Vargas's statements that she felt isolated due to her mental impairments. (Id.) Dr. Cervantes opined that Vargas had impaired cognition and a poor short-term memory. (Id.)

The other assessment completed by Dr. Cervantes on October 4, 2012 was a much longer and more detailed medical source statement. (Id. at 812–19.) In this assessment, the doctor diagnosed Vargas as suffering from major depressive disorder and panic disorder. (Id. at 812.)

The clinical findings that Dr. Cervantes gave supporting his diagnosis were: poor memory, mood disturbance, emotional lability, retardation, difficulty thinking, decreased energy, and persistent anxiety. (Id. at 813.) Dr. Cervantes opined that Vargas was markedly limited in 17 different ways, including, the ability to: remember locations and work procedures, carry out simple instructions, maintain attention, and complete a work week without interruption. (Id. at 813–16.) Like Dr. Locuratolo, Dr. Cervantes opined that Vargas was "incapable of even low stress" work environments. (Id. at 815.)

### D. Testimony of the Medical Expert

The ALJ called Dr. Rita Clark to testify at the hearing. (R. at 1310–16.) From her review of the Record, Dr. Clark opined that Vargas was severely limited due to her severe intellectual impairment. (Id. at 1311.) Thus, she opined that Vargas was per se disabled because she met the listing for mental impairments in 12.04 of the SSA regulations. (Id.) She based her assessment on Dr. Cochrane's opinion of February 23, 2005 and Dr. Cervantes's opinion of October 4, 2008. (Id. at 1311–12.) Dr. Clark relied on the opinion of Dr. Cervantes from 2008, even though the ALJ had cautioned her that it fell outside of the time frame. (Id. at 1312.)

### III.   The ALJ's Decision

Walking through the five-step sequential framework provided by the SSA regulations, the ALJ first found that Vargas met the insured status requirements of the SSA through December 31, 2008, and that she had not engaged in substantial gainful activity since May 1, 2003. (Id. at 19.) The ALJ then found that Vargas's mental condition was a severe impairment. (Id.) On the other hand, the ALJ found that Vargas had not established that any of her physical impairments met the severe impairment threshold. (Id.) At the next step, the ALJ determined that Vargas's mental condition did not render her per se disabled, despite the medical expert's opinion to the contrary.

(Id.) The ALJ next determined that Vargas could not perform her past job as a home health aide, (id. at 24), but she had the RFC to perform "the full range of medium work," (id. at 25). The Vocational Expert opined that Vargas could perform jobs such as hand packager, cleaner, and kitchen helper. (Id.)

Key to the ALJ's RFC determination, and ultimately his decision that Vargas was not disabled for the time period, was that he gave "significant weight" to opinions from three of the four consulting physicians. (Id.) In doing so, the ALJ gave no weight to the opinions from Vargas's treating physicians, Drs. Locuratolo and Cervantes. (Id.) The ALJ also set aside the opinion of the testifying medical expert on the grounds that she relied on Dr. Cervantes's opinion from October 4, 2008, and she "appeared to have a general unfamiliarity with the record." (Id. at 23.)

## STANDARD OF REVIEW

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Where the Commissioner's decision rests on adequate findings supported by

evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); see also 42 U.S.C. § 405(g) ("The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

This deferential standard of review does not apply, however, to the ALJ's legal conclusions. Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003). "[W]here an error of law has been made that might have affected the disposition of the case," the court will not defer to the ALJ's determination. Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004) (quoting Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). Rather, an ALJ's "[f]ailure to apply the correct legal standards is grounds for reversal." Id. (quoting Townley, 748 F.2d at 112). Legal error may include failure to adhere to the applicable regulations. See Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." Ellington v. Astrue, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009).

"When the plaintiff proceeds pro se, as in this case, a court is obliged to construe his pleadings liberally" and interpret them as raising the strongest arguments they suggest. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after Twombly . . . we remain obligated to construe a pro se complaint liberally."). Accordingly, the Court will construe Vargas's handwritten submission as raising the strongest arguments it suggests.

## DISCUSSION

Vargas appears to contend that the ALJ erred by failing to consider that her disability began on May 1, 2003 and continues to this day. (Pl. Mem. at 2.) For support, she argues that the clinical

evidence supported a ruling that she was disabled from May 1, 2003 through September 18, 2006. (Id.) By contrast, the Commissioner argues that it was within the ALJ's discretion to weigh conflicting medical reports and that he was entitled to give controlling weight to a non-treating physician. (D.E. # 12 ("Comm'r Br.") at 19.) At the outset, it bears mentioning that Vargas previously accepted the SSA's proposed finding that she became disabled on September 18, 2006. (Id. at 246.) Nonetheless, she challenged that finding and the SSA afforded her two new hearings. (Id. at 22.) The Commissioner does not appear to have attempted to bind Vargas to that agreement before proceeding to grant Vargas two more hearings. Indeed, in seeking dismissal of the instant Complaint, the Commissioner only lightly treads on this point, describing it as "interesting" that Vargas had previously accepted September 19, 2006 as her disability onset date. (Comm. Br. at 25.) Therefore, because the Commissioner proceeded to hold two new hearings on whether Vargas was disabled from May 1, 2003 through September 18, 2006 and does not seek to somehow hold Vargas to her prior agreement now, the Court proceeds to determine whether the ALJ's decision comported with the evidence and the law. For the reasons set forth below, the Court concludes that the ALJ's failure to apply the treating physician rule requires this case to be remanded.

A treating physician's opinion on the "nature and severity" of the plaintiff's impairments will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2); see Matta v. Astrue, 508 F. App'x 53, 57 (2d Cir. 2013) (discussing the treating physician rule); Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) ("The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place him in a

unique position to make a complete and accurate diagnosis of his patient." (quoting Mongeur, 722 F.2d at 1039 n.2)).

Furthermore, "[w]here mental health treatment is at issue, the treating physician rule takes on added importance." Amarante v. Comm'r of Soc. Sec., No. 16-CV-717 (RJS), 2017 WL 4326014, at *9 (S.D.N.Y. Sept. 8, 2017) (citing Rodriguez v. Astrue, No. 07-CV-534 (WHP), 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009)).

> A mental health patient may have good days and bad days; [he] may respond to different stressors that are not always active. Thus, the longitudinal relationship between a mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination.

Bodden v. Colvin, No. 14-CV-8731 (SN), 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015); see also Richardson v. Astrue, No. 09 Civ. 1841 (SAS), 2009 WL 4793994, at *7 (S.D.N.Y. Dec. 14, 2009) ("Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health." (internal citations and quotation marks omitted)).

Implicit in the foregoing, the treating physician rule, while important, is not unassailable. For example, "when treating sources' opinions swim upstream, contradicting other substantial evidence (such as opinions of other medical experts), or for any good reason, administrative law judges can decline to afford them controlling weight." Taylor v. Comm'r of Soc. Sec., No. 14-CV-0814 (GTS), 2015 WL 4649820, at *8 (N.D.N.Y. Aug. 5, 2015). But, when the ALJ declines to afford a treating physician's opinion controlling weight, "SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citing Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). The factors that the ALJ must consider in determining the amount of weight to assign to

a treating physician's opinion are: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian, 708 F.3d at 418 (citing Burgess, 537 F.3d at 129); see also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) and discussing the factors). Although the ALJ is not required to discuss the factors explicitly, it must be clear from the decision that the proper analysis was undertaken. See Petrie, 412 F. App'x at 406 ("[W]here 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" (quoting Mongeur, 722 F.2d at 1040)).

A corollary to the treating physician rule and the 20 C.F.R. § 4041527(c)(2)–(6) factors is the "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakley v. Comm'r of Social Sec., 581 F.3d 399, 406–07 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96–2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). When the ALJ fails to weigh a treating physician's opinion reflected in the record and give "good reasons" for declining to accord it controlling weight, "his decision is neither supported by substantial evidence nor based on proper application of 20 C.F.R. § 4[04.1527]." Tavarez v. Barnhart, 124 F. App'x 48, 50 (2d Cir. 2005). Thus, the Second Circuit has instructed that courts should not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion." Halloran, 362 F.3d at 33.

13

Here, the ALJ gave no weight to the opinions of Drs. Locuratolo and Cervantes. (R. at 23.) Both of those opinions placed numerous and severe limitations on Vargas's abilities due to her mental impairments. Dr. Locuratolo opined that Vargas was limited in 14 basic activities, such as the ability to make simple work-related decisions, (R. at 604), and Dr. Cervantes opined that Vargas was limited in 17 basic activities, such as the ability to ask simple questions, (id. at 816). The ALJ gave their opinions no weight because "[t]hese opinions appear to be based largely on claimant's complaints of pain . . . and allegations that she is very limited in performing activities of daily living, [but] this is completely inconsistent with the record, which does not indicate any significant treatment for claimant's physical impairments during the relevant time period." (Id.) The ALJ also stated that he was setting aside the opinions from these two treating physicians because "the clinical findings by the consultative examiner were all in the normal range." (Id.) For several reasons, the ALJ's analysis failed to demonstrate proper fealty to the treating physician rule before discarding the opinions from Drs. Locuratolo and Cervantes. Specifically, in declining to give Drs. Locuratolo's and Cervantes's opinions any weight, the ALJ neglected to: (A) consider any of the factors enumerated in 20 C.F.R. § 404.1527(c) and (B) give "good reasons" for doing so.

### A. The ALJ Did Not Consider the 20 C.F.R. § 404.1527(c) Factors

The ALJ was obligated to follow the analytical path mandated by 20 C.F.R. § 404.1527, which requires that he consider the length of the treating relationship, the expertise of the treating doctors, the consistency of their findings, and the extent to which the record offers support for some or all of those findings. See Burgess, 537 F.3d at 129 (quoting 20 C.F.R. § 404.1527(d)(2)); Fox v. Astrue, No. 05-CV-1599 (NAM), 2008 WL 828078, at *8 (N.D.N.Y. Mar. 26, 2008). The ALJ here erred because it does not appear that he applied any of the factors provided by 20 C.F.R.

14

§ 404.1527(c)(2)–(6) in determining the weight to give Drs. Locuratolo's and Cervantes's opinions. See Bunn v. Colvin, 11-CIV-6150 (NGG), 2013 WL 4039372, at *7 (E.D.N.Y. Aug. 7, 2013) (citing Schaal, 134 F.3d at 504) (finding the ALJ erred because "in evaluating Dr. [Chapman's] opinion, the ALJ did not appear to have applied any of the factors provided by 20 C.F.R. § 404.1527(c)(2)–(6) for determining the weight to give a noncontrolling opinion of a treating physician")). For example, the ALJ did not consider the treatment relationship between Vargas and Dr. Locuratolo, which the Record indicates involved examinations over the course of the 18 months prior to the date on which Dr. Locuratolo issued his first opinion. (R. at 600.) This factor weighs heavily in this case because the ALJ was forced to look in 2015 to determine whether Vargas was disabled in 2003 through 2006—a time period for which there are limited medical records—and it appears that Dr. Locuratolo had by far the longest look at Vargas's condition. See Bodden, 2015 WL 8757129, at *9 (finding that "the longitudinal relationship between a mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination."); Bunn, 2013 WL 4039372 at *7–8 (finding that the ALJ erred where "the ALJ's decision makes no reference to the fact that [the treating physician] is a specialist who had the opportunity to examine [the plaintiff] every one to three months over the course of fourteen months"). Accordingly, because the "ALJ failed to consider all of the relevant factors in deciding what weight to assign the opinion of a treating physician, the ALJ's decision is flawed." Box, 3 F. Supp. 3d at 44.

Moreover, "[w]hile the ALJ is not required to discuss the factors explicitly, it must be clear from the decision that the proper analysis was undertaken." Calixte v. Colvin, No. 14-CV-5654 (MKB), 2016 WL 1306533, at *24 (E.D.N.Y. Mar. 31, 2016) (citing Petrie, 412 F. App'x at 406

("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (internal quotation marks omitted)). The Record here does not provide a sufficient basis to conclude that the proper analysis was undertaken. Indeed, the ALJ does not mention the treating physician rule or acknowledge that it requires special consideration of the treating physicians' opinions. See Bradley v. Colvin, 110 F. Supp. 3d 429, 437 (E.D.N.Y. 2015) (remanding where "ALJ O'Leary did not properly apply—or even acknowledge the existence of— the treating physician rule"). Instead, the ALJ gave less consideration to the opinions of Drs. Locuratolo and Cervantes than he gave to the opinions given by consulting physicians. For example, prior to concluding "there is not support for the claimant's allegations to the psychiatrist, and the psychiatrist's conclusions must be called into question," (R. at 24), the ALJ analyzed the two treating physician opinions in just two sentences total, (id. at 24–25). Without more, the Court cannot divine a basis for the ALJ's conclusions that Drs. Locuratolo's and Cervantes's opinions were "inconsistent" with the Record. Therefore, because the Record is unclear about whether the ALJ considered the requisite factors before giving no weight to the treating physicians' opinions, the case must be remanded.

### B. The ALJ Failed to Provide "Good Reasons" for Discarding the Opinions of Two Treating Physicians

#### 1. Dr. Locuratolo

Despite the cursory treatment the ALJ gave to Dr. Locuratolo's opinions, the Commissioner argues that the ALJ nevertheless discharged his duties under the treating physician rule by providing "good reasons" for discarding his opinions. (Comm Br. at 31–33.) According to the Commissioner, this is shown by the ALJ's statement that he was setting aside Dr.

Locuratolo's opinion because it "quoted extensively from [Vargas's] statements in both [of] his letters as the basis for his opinions." (Id. at 31.) As an initial matter, the Commissioner's argument fails because, even though it appears to have some merit regarding the letters submitted by Dr. Locuratolo, it fails to reckon with the formal medical source statement that he completed on January 29, 2007. (See R. at 607.) In fact, the Commissioner aims its argument solely at the two letters without ever mentioning the January 29, 2007 opinion. (See Comm'r Br. at 31 ("Indeed, Dr. Locuratolo quoted extensively from Vargas's statements in both his letters as the basis for his opinions.").)

The Commissioner's failure to address the January 29, 2007 opinion is understandable because, even though the ALJ cited it as a document that he considered, it is not clear that he reckoned with its substance. Indeed, similar to the Commissioner's argument, the ALJ's analysis appears aimed solely at the letters because, although the letters quote Vargas's statements about her condition, there is no indication from Dr. Locuratolo's January 29, 2007 opinion that he relied upon her subjective statements. To the contrary, unlike his two letters, Dr. Locuratolo's January 29, 2007 opinion states that it was "based upon objective clinical evidence." (R. at 607.) And, there was "objective clinical evidence" supporting Dr. Locuratolo's findings, including Dr. Cochrane's report of February 23, 2005. (Id. at 420.) Dr. Cochrane reported that he conducted several mental capacity tests, including the "picture completion subtest" that revealed that Vargas' mental limitations rendered her unable to perform simple tasks, maintain concentration, make appropriate decisions, or deal with stress. (R. at 420.) Additionally, Dr. Locuratolo identified 13 different "positive clinical findings" that supported his opinion. (Id. at 601.) Therefore, even if the ALJ's opinion grappled with Dr. Locuratolo's January 29, 2007 opinion—a conclusion that is unclear not clear from the Record—his basis for rejecting it is insufficient because there is no

indication that it was based upon only Vargas's subjective complaints. Accordingly, because Dr. Locuratolo's January 29, 2007 opinion appears to have eluded the review of both the ALJ and the Commissioner, the reasons that the ALJ gave for affording it no weight necessarily fail to comply with the treating physician rule.

The other argument advanced by the ALJ for rejecting Dr. Locuratolo's January 29, 2007 opinion is likewise insufficient. The ALJ stated that Dr. Locuratolo's findings were "completely inconsistent with the record." (R. at 23.) This cannot serve as a basis for discarding Dr. Locuratolo's opinions because it contradicts the Appeals Council's prior pronouncements on the issue. "Failing to abide by an Appeals Council remand order is also grounds for a court to remand the case." Holman v. Colvin, No. 12-CV-5817 (JMF), 2014 WL 941823, at *3 (S.D.N.Y. Mar. 11, 2014); Mortise v. Astrue, 713 F. Supp. 2d 111, 120–24 (N.D.N.Y. 2010) (remanding based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule); Mann v. Chater, No. 95-CV-2997 (SS), 1997 WL 363592, at *3 (S.D.N.Y. June 30, 1997) (Sotomayor, J.); see also 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."). Here, in ruling that Vargas was disabled as of September 19, 2006, the Appeals Council found that "the medical record supports Dr. Locuratolo's opinion . . . dated September 19, 2006, January 29, 2007, and June 19, 2008." (R. at 243–44.) Thus, directly contrary to the ALJ's finding, the Appeals Council had already determined that Dr. Locuratolo's September 19, 2006 and January 29, 2007 opinions were

consistent with the Record. Accordingly, the ALJ could not use this as a basis to reject Dr. Locuratolo's opinion.

On the surface, it might seem possible to look beyond this prior ruling from the Appeals Council because, upon Vargas's consent, the Appeals Council found that she was disabled beginning only on September 19, 2006. But, after Vargas withdrew from that agreement, it is not possible to cabin the Appeals Council's ruling to September 19, 2006 forward. A review of the Record demonstrates that the Appeals Council's ruling contained several implicit findings about Dr. Locuratolo's opinions that the ALJ appears to have overlooked. First, Dr. Locuratolo's January 29, 2007 opinion, which the Appeals Council described as "supported" by the evidence, (R. at 243), opined that Vargas's symptoms and limitations began in "late 2002," (id. at 607). Moreover, the Record demonstrates that at the time of Dr. Locuratolo's opinions of September 19, 2006 and January 29, 2007, the only evidence in the Record was from the time period currently in dispute—May 1, 2003 through September 18, 2006. (See, e.g., id. at 315–608.) Indeed, the Appeals Council implicitly recognized as much because all of the evidence that it reviewed prior to finding that Dr. Locuratolo's opinion was supported by the medical record was from before September 19, 2006. (See id. at 242.) To illustrate, just before discussing Dr. Locuratolo's opinions, the Appeals Council discussed the report by Dr. Cochrane from February 23, 2005, Dr. Sherman's report from May 5, 2005, and Dr. Rupp-Goolnick's report from May 27, 2005. (Id.)

Limiting the Appeals Council's construction of Dr. Locuratolo's opinions would also be inconsistent with the Record as a whole. The genesis of Vargas's mental limitations appears to be her fall on the ice in the spring of 2003; she worked for twenty years before that day and has not worked since. (See, e.g., id. at 429.) Moreover, the Appeals Council recognized that there had been no material change in Vargas's condition since at least 2005 by ruling that Dr. Locuratolo's

opinion was consistent with the medical reports from 2005 and "consistent with Dr. Cervantes' opinion dated October 4, 2008." (Id. at 243.) Consequently, the ALJ's decision to discard Dr. Locuratolo's opinions on the basis that they were inconsistent with the evidence is not only unsupported by the Record, but it also contradicts the Appeals Council's prior findings. Accordingly, the ALJ erred by relying on these reasons for setting Dr. Locuratolo's opinions aside.

### 2. Dr. Cervantes's Opinion from October 4, 2008

The ALJ's decision to give no weight to Dr. Cervantes's opinion from October 4, 2008, failed to comport with the SSA's regulations because it does not appear that he weighed one of the doctor's opinions, and even if he did, the reasons given are inadequate. First, it appears that the ALJ failed to weigh a medical source statement signed by Dr. Cervantes on October 4, 2008. Given the importance of the treating physician rule, the ALJ's failure to consider an opinion a treating source warrants remand without much further ado. See Snell, 177 F.3d at 134 ("We therefore conclude that Snell is entitled to an express recognition from the Appeals Council of the existence of Dr. Clark's favorable August report and, if the Council does not credit the findings of that report, to an explanation of why it does not."); Gonzalez v. Astrue, No. 10-CV-2941 (DLI), 2012 WL 3930412, at *7 (E.D.N.Y. Sept. 10, 2012). In considering Dr. Cervantes's opinion, the ALJ cited only to Exhibit 38F, (R. at 23), which is a short narrative report from Dr. Cervantes, also dated October 4, 2008, (id. at 842). However, the much more comprehensive medical source statement wherein Dr. Cervantes opined that Vargas was markedly limited in 17 different ways, (id. at 815–17), was Exhibit 36F, (id. at 7), and the ALJ neglected to mention or consider that exhibit, (see id. at 16–25).

The Commissioner fails to account for the ALJ's failure to consider Dr. Cervantes's October 4, 2008 medical source statement. Instead, the only basis the Commissioner proposes for

20

finding that the ALJ adequately considered Dr. Cervantes's medical source statement relates to the short narrative report from Dr. Cervantes also from October 4, 2008. (Comm. Br. at 30.) However, even if the Court were to consider the ALJ's citation to Dr. Cervantes's short narrative report from the same day as Dr. Cervantes's lengthier medical source statement, the reasons given by the ALJ would be insufficient to set aside the medical source statement. The Commissioner argues that the ALJ properly found that Dr. Cervantes's opinion was "based on Plaintiff's subjective symptoms rather than objective examination findings." (Comm. Br. at 31.) However, although this might well apply to Dr. Cervantes' short narrative report, neither the ALJ, nor the Commissioner, explains how it can be discerned that Dr. Cervantes's medical source statement was based upon Vargas's subjective statements. Indeed, Dr. Cervantes's medical source statement is free from any references to Vargas's subjective statements. Furthermore, Dr. Cervantes's opinion identified 14 different "positive clinical findings" that supported his diagnosis. (R. at 813.) Accordingly, the ALJ and the Commissioner's speculation that Dr. Cervantes's October 4, 2008 opinion was based upon Vargas's subjective statements is an insufficient basis to reject his opinion because it is unsupported by the Record.

Additionally, to the extent the ALJ rejected Dr. Cervantes's October 4, 2008 medical source statement as inconsistent with the Record, this could not serve as a proper basis. As was the case with Dr. Locuratolo's opinions, the Appeals Council had already deemed Dr. Cervantes's October 4, 2008 medical source statement fully supported by the Record. (R. at 243 ("The Appeals Council finds that the medical record supports Dr. Locurato [sic] and Dr. Cervantes' opinions.").)

21

Therefore, because the Appeals Council had already held that Dr. Cervantes's October 4, 2008 opinion was supported by the Record, the ALJ was not entitled to discard it on that basis.

It also appears that the ALJ may have given no credence to Dr. Cervantes's opinion because it was issued on October 4, 2008, two years after the disputed period ended. (R. at 23 ("This evidence, however, is a report dated October 4, 2008.").) Courts in this Circuit hold that "[m]edical opinions given after the date that [claimant's] insured status expired are taken into consideration if such opinions are relevant to [claimant's] condition prior to that date. The expiration date should not act as a cutoff with regard to the reports considered on this specific issue." Cardoso-Navarrete v. Berryhill, No. 17-CV-2446 (RJS), 2017 WL 6375947, at *11 (S.D.N.Y. Dec. 13, 2017) (citations omitted); see also Pollard, 377 F.3d at 194 (finding that "the district court erred insofar as it categorically refused to consider," as evidence of disability, records "generated [after the relevant time period] and [that] did not explicitly discuss [the claimant's] condition during the relevant time period" (citations omitted)).

Here, it is not dispositive that Dr. Cervantes's opinion was issued two years after the disputed period ended for at least three reasons. First, the medical evidence that the Appeals Council found to have supported Dr. Cervantes's opinion was all from 2003 through 2006. (R. at 243.) Second, Dr. Cervantes expressly opined that Vargas's conditions dated back to at least to 2005. (Id. at 842.) Third, the ALJ was obligated to expressly state why he found that Dr. Cervantes's opinion did not relate back to the period between May 1, 2003 and September 18, 2006. See Stewart v. Astrue, No. 10-CV-3032 (DLI), 2012 WL 314867, at *9 (E.D.N.Y. Feb. 1, 2012) ("[T]he Second Circuit has recognized that medical evidence obtained subsequent to a Plaintiff's last insured date is not irrelevant to whether a Plaintiff ha[s] been continuously disabled . . . ." (quoting Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989))); Stewart v. Colvin, No. 15-CV-

2427 (MKB), 2016 WL 5349768, at *16 (E.D.N.Y. Sept. 23, 2016) ("ALJ Hein was incorrect in summarily concluding that Dr. Khan's opinions were irrelevant to assessing whether Plaintiff's condition was continuous and severe prior to 2009, even if Dr. Khan made no reference to Plaintiff's limitations in 2005."). Accordingly, the Court finds that the ALJ was not entitled to set the medical source statement aside merely because it was issued two years after the disputed period had ended.[1]

\*      \*      \*

The Court recognizes the difficult position that Vargas put the SSA in by retracting her prior agreement that she became disabled as of September 19, 2006. However, it does not appear that the Commissioner attempted to enforce that agreement. Instead, the SSA held two new hearings and ALJs had to look back a decade to determine whether Vargas was disabled from May 1, 2003 through September 18, 2006 on a somewhat sparse record. As commendable as the sheer amount of process that the SSA afforded Vargas is, it was still necessary for the ALJ to adhere to the SSA's regulations and the Appeals Council's prior pronouncements throughout the protracted history of this case. That was not done. Those failures require remand for reconsideration.

## CONCLUSION

For the reasons set forth above, the Commissioner's cross-motion for judgment on the pleadings is denied. Vargas's motion for judgment on the pleadings is granted. The ALJ's

---

[1] The ALJ also declined to give any weight to the testifying medical expert because she relied on Dr. Cervantes's opinions from October 4, 2008. (See R. at 23 ("[T]he testifying medical expert . . . appeared to rely only on a 2008 report of the claimant's psychiatrist.").) The Commissioner asserts this was proper because the testifying expert "had expressly relied on the 2010 opinion of Dr. Cervantes, which post-dated the relevant period by four years." (Comm. Br. at 30.) However, as the ALJ recognized, the testifying expert relied on Dr. Cervantes's opinions from October 4, 2008. (R. at 23.) That opinion has already been found to be consistent with the Record from 2005. (R. at 243.) Accordingly, on remand, the ALJ should re-weigh the testifying expert's opinion.

23

decision is reversed and the matter is remanded to the ALJ under the fourth sentence of 42 U.S.C.

§ 405(g) for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

Dated: December 10 , 2019
      Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon
United States District Judge